UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RANDY PURIFOY,

  Petitioner,

 v.               Case No. 08-C-0722

STEVE WATTERS, Director,
Wisconsin Resource Center,

  Respondent.

**DECISION AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

  On August 26, 2008, the petitioner, Randy Purifoy ("Purifoy"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case was randomly assigned to United States District Judge Rudolph T. Randa. On September 11, 2008, Judge Randa issued an order under Rule 4 of the Rules Governing Section 2254 Cases directing the respondent to file an answer to the petition together with a motion and supporting memorandum, if appropriate, directed to the validity of Purifoy's claims. Thereafter, upon the consent of the parties to magistrate judge jurisdiction, the case was reassigned to this court for further proceedings and the entry of final judgment.

  The respondent filed an answer to the petition. Thereafter, the parties filed briefs setting forth their respective positions regarding Purifoy's claims. The issues presented by Purifoy's habeas corpus petition are now fully briefed and are ready for resolution. For the reasons that follow, Purifoy's habeas corpus petition will be denied.[1]

---

[1] On November 9, 2009, Purifoy filed a "Motion to Continue." In that motion, Purifoy seeks to "continue to proceedings to judgement [sic] without further delay." Purifoy's motion will be denied as moot.

# I. PROCEDURAL AND FACTUAL BACKGROUND

In 1976, Purifoy, then a sixteen-year-old, raped and murdered Nola Mae R. After his arrest, Purifoy confessed to several other violent sexual assaults and attempted sexual assaults, and to two armed robberies. Purifoy pled guilty to one count of rape and second-degree murder. Purifoy was committed under Wis. Stat. § 975.06 (1975) for an indeterminate amount of time for the rape. Purifoy was sentenced to a consecutive prison term of five to twenty-five years for the murder charge, to commence upon discharge from the Wis. Stat. § 975.06 commitment. Purifoy was hospitalized until mid-1990, when he was discharged from the commitment. He then was transferred to the custody of the Department of Corrections. On May 1, 2002, the State filed a petition alleging that Purifoy was a sexually violent person within the meaning of Wis. Stat. § 980.01(7) (2001-02). The petition further alleged that, "[u]pon information and belief," Purifoy "will be released from the sentence . . . within 90 days."

Previously, in February 2002, Purifoy filed a state habeas corpus petition in Winnebago County Circuit Court in which he challenged the calculation of the mandatory release date under his 1976 sentence. Purifoy was successful, and the circuit court granted Purifoy fifteen months of additional "good time" credit. See Wis. Stat. § 53.11 (1975). After recalculation, Purifoy's mandatory release date became September 26, 2001. The state habeas court ordered Purifoy's release by May 22, 2002.

A Wis. Stat. ch. 980 petition must allege, and the State must prove, that the defendant (respondent) is within ninety days of discharge or release. Wis. Stat. § 980.02(2)(ag) (2001-02). In a pretrial motion to dismiss the § 980.01(7) petition, Purifoy argued that the petition was untimely because it had not been filed within ninety days of September 26, 2001.

Purifoy's motion to dismiss the petition as untimely was denied by the circuit court. Proceeding

2

to the merits of the petition, the circuit court conducted a bench trial on January 7 and 8, 2004, with closing arguments on February 20, 2004. On March 19, 2004 the circuit court found that Purifoy was a sexually violent person and committed him to institutional care pursuant to Wis. Stat. § 980.01(7) (2001-02).

On July 3, 2007, the Wisconsin Court of Appeals affirmed the circuit court's order. In doing so, the court of appeals found that the petition was timely, that there was sufficient evidence to support the circuit court's finding, and that Wis. Stat. ch. 980 was constitutional. On September 13, 2007, the Wisconsin Supreme Court denied Purifoy's petition for review.

Thereafter, Purifoy filed his federal habeas petition. His petition asserts the following claims: (1) "Agents of the State intentionally held me beyond my mandatory release date thereby forcing me into a legal situation that allowed the State to file a 980 petition outside the mandatory time limit"; (2) "The State Court violated my right to procedural due process when it found that the 980 petition was timely filed"; (3) "the Court did not apply the laws of Wisconsin and permitted the State to switch from a prior position that the State fought for and received benefit from to a new, contrary position."; and (4) "The evidence was insufficient as a matter of Due Process because the State did not prove that I was dangerous at the time the Court entered its verdict." (Habeas Pet. at 6-9.).

## II. LEGAL STANDARDS

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir.1997); *see also Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1370 (7th Cir.1994) (en banc) ("[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.").

3

The federal courts may not grant habeas relief under Section 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000). A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first, or risk procedural default. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir.1996) (same). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir.1997)

4

(quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). This means that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Although interrelated, courts have discussed exhaustion of state remedies and procedural default as separate issues.

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir.1985).

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir.1994). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir.1996).

Under the doctrine of procedural default, a federal habeas court will not review defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50. The petitioner bears the burden of establishing that his procedural default is excused by one of these two exceptions. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).

To satisfy the cause and prejudice standard, a petitioner must "show that some objective factor

5

external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner must also show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). To demonstrate that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims, the petitioner is required to show that he is "actually innocent." *See Bousley v. United States*, 523 U.S. 614, 622 (1998). With the forgoing in mind, the court turns to the petitioner's claims.

### III. DISCUSSION

Purifoy's first claim is that "[a]gents of the State intentionally held [him] beyond [his] mandatory release date thereby forcing [him] into a legal situation that allowed the State to file a 980 petition outside the mandatory time limit." (Pet. at 6) Regardless of whether "agents of the State" did so, the respondent argues correctly in his brief that the petitioner is not currently in custody as a result of an error in his mandatory release date for parole. Rather, he is in custody as a result of a judgment finding him to be a sexually violent person. And, as stated above, federal courts may issue a writ of habeas corpus only if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) Thus, to the extent that Purifoy claims that he is entitled to habeas corpus relief on the grounds that he was kept in custody beyond his mandatory release date, his claim must be denied.

Purifoy's second claim is that "[t]he State Court violated [his] right to procedural due process when it found that the 980 petition was timely filed." To be sure, it would appear that when the State filed the 980 petition, Purifoy was not within 90 days of "discharge or release on parole, extended

6

supervision or otherwise," assuming that his correct mandatory release date was September 26, 2001 (as was so determined by the state habeas court). This is because the 980 petition was filed on May 1, 2002, more than 7 months after his subsequently correctly determined mandatory release date had come and gone. But, abundantly apparent from Purifoy's claim is that it is predicated on an asserted violation of state law, to wit, Wis. Stat. § 980.02(2)(ag) (2001-02). It is well settled that a federal habeas claim cannot be predicated on a mere violation of state law. Rather, it must be predicated on a violation of the Constitution or laws or treaties of the United States.

> The Wisconsin Court of Appeals specifically stated:
>
> Purifoy argues that the petition was untimely because it was not filed within ninety days of September 26, 2001. The recalculation of Purifoy's mandatory release date does not render the petition untimely. *See State v. Carpenter*, 197 Wis.2 252, 274-275, 541 N.W.2d 105, 114 (1995) (The State may rely on the release date calculated when the petition is filed; a subsequent recalculation does not render the petition untimely.); *see also State v. Virlee*, 2003 WI App 4, ¶¶ 17018, 259 Wis.2d 718, 727-728, 657 N.W.2d 106, 111.

(Ct. App. Dec.¶ 6.) Applying the law of the State of Wisconsin, the court of appeals specifically held that the petition was not untimely under the statute. Because the court of appeals applied state law in deciding that the petition was filed in timely fashion, this federal habeas court cannot find otherwise.

Furthermore, to the extent that Purifoy is claiming that the "untimely petition" somehow violated his right to due process, his claim must be rejected. Purifoy cites no Supreme Court precedent prescribing *when* a civil commitment petition must be filed. Thus, to the extent that Purifoy claims that the civil commitment petition was filed against him in violation of his rights under the Due Process Clause of the Constitution, his claim must be rejected.

Purifoy's third claim is that "the Court did not apply the laws of Wisconsin and permitted the State to switch from a prior position that the State fought for and received benefit from to a new,

7

contrary position." In his brief, Purifoy expands on this claim. He asserts:

> In 1976, Purifoy was placed under Wisconsin's then Sex Deviate Commitment for the offense of rape and the read-ins. On July 3, 1990, the State granted Purifoy a s.975.11 discharge certifying that Purifoy was no longer a danger to the public or suffering from a mental illness requiring treatment as a result of the 1976 conviction for rape and the read-ins. Such discharge effectively and completely terminated any further incarceration, supervision or legal holdings over Purifoy by the State for the 1976 rape conviction and read-ins.

(Pet.'s Br. at 20.) Yet, argues Purifoy, after he had served his sentence for the murder charge, the State changed its position from maintaining that the two charges were separate and distinct crimes (thereby allowing for separate penalties) to claiming that the murder conviction was "sexually related." By doing so, the State was able to (and did) argue that Purifoy could be civilly committed as a sexually violent person. According to Purifoy:

> At the time of the filing of the § 980 petition Purifoy was not then serving a sentence that was imposed for a conviction of a sexually violent offense or so related. Purifoy avers that it was violative of his substantive and procedural due process rights for the court to permit the State to change positions it sought and received benefits from to a contrary position that operated to revive a completed rape conviction and prosecute Purifoy a second time for the same offense.
>
> The State also changed its position from one established on July 6, 1990. Purifoy was discharged as "no more a danger to the public while incarcerated or paroled" in regards to the rape conviction (Exhibit C). Then on May 1, 2002, the State alleged that Purifoy "will engage in acts of sexual violence" (Exhibit F, page 3, top line).
>
> Although Purifoy did nothing to call into question the viability and virtue of the treatment he received and the validity of the subsequent s.975.11 discharge, the State invalidated the discharge determination on the basis that the then sex offender treatment was substandard to today's quality of care, and then, having traversed the discharge, used selective pre-discharge treatment notations to substantiate the State's claim that Purifoy did not participate in treatment sufficiently enough to be considered not dangerous.
>
> Purifoy avers that his earning of a s.975.11 discharge is a substantive liberty and property right that can only be negated by Purifoy's commission of a sexually violent

8

act subsequent to the earning of the discharge, and until such time Purifoy is entitled to the protections of both State and U.S. Constitutions with regard to such liberty and property rights.

(Pet.'s Br. at 21-22.)

Relatedly, Purifoy argues that

> [s]ince Chapter 975 (first) and Chapter 980 (second) do constitute identical causes of action (civil commitment) and involve resolution of the same issues (treatment of disorder, protection of the public, prevention of future violations), and utilize the same evidence (Purifoy's 1976 convictions), the State is thereby precluded from bringing a successive action because the final judgment given by the § 975.11 discharge is conclusive in all subsequent actions between the same parties (State v. Purifoy) as to all matters which were litigated or might have been litigated in all former proceedings. LAUNDRY v. SCHOTT, 196 N.W.2d 692, 693, 54 Wis.2d 723, and the court thereby lacked jurisdiction and competency to proceed with a subsequent § 980 petition.
>
> It is "unconscionable," and thereby violative of Due Process, to allow the State to revise an earlier position that the State benefitted from so that, under revision, the State can benefit a second time by arguing the position it was originally contrary to. SANFELIPPO v. WISCONSIN DEPARTMENT OF REVENUE, 490 N.W.2d 530, 170 Wis.2d 381, review denied 491 N.W.2d 766.

(Pet.'s Br. at 24-25.) In other words, Purifoy seems to claim that by allowing the State to get two kicks at the cat through filing a § 980 petition after Purifoy had completed his § 975 commitment, he is being punished twice for the same offense contrary to the Double Jeopardy Clause of the Fifth Amendment and is being punished in violation of the *ex post facto* clause. *See* Art. 1, Sec 10, U.S. Constitution.

In response to what this court has described above as Purifoy's double jeopardy and *ex post facto* claims, the respondent asserts that he has procedurally defaulted such claims. Specifically, the respondent argues as follows:

> Purifoy next claims that he was denied substantive and procedural due process. His reasoning is not entirely clear, but as Bartow reads his brief, he claims that, in his case, Chapter 980 constitutes double jeopardy, impairs an obligation of contract (or breaches of a plea agreement) and is generally unfair. Purifoy presented none of these claims to the state courts and accordingly has procedurally defaulted them.

9

> . . . .
>
> Here, an examination of Purifoy's opening brief in the Wisconsin Court of Appeals reveals that Purifoy raised two due process claims. First, he argued that the state's proof was constitutionally insufficient because it did not prove Purifoy was currently dangerous (13:Exhibit B: 30-31). Second, he argued that Wisconsin's scheme for sexually violent commitment deprived him of due process because it did not require proof of a likelihood to reoffend within any particular period (13:Exhibit B: 31-35). These claims are not the claims he now advances – claims of double jeopardy, impairment of an obligation of contract, breach of a plea agreement or a fundamentally unfair process. He cited no cases regarding the current claims, either state of federal. He cited no cases which would "call to mind a specific constitutional right" nor does he "allege[] a pattern of facts that is well within the mainstream of constitutional litigation" concerning these current claims. *Verdin*, 972 F.2d at 1473-74.

(Resp.'s Br. at 6-7.) I agree with the respondent.

In that section of his initial brief with the Wisconsin Court of Appeals summarizing the arguments being presented to that court in his appeal, Purifoy asserted as follows:

> Section one argues that Mr. Purifoy's procedural due process rights were violated by the untimely filing of the petition, and the manner the State and trial court used to render it timely. The remaining sections argue violations of substantive due process: Section two argues that, as a matter of due process, the evidence is insufficient to show that Mr. Purifoy is sexually dangerous because motivated by a mental disorder, as opposed to presenting only the actuarial risk posed by anyone committed of crimes. Section three argues that the evidence is insufficient as a matter of due process, to show present dangerousness. And section four argues that chapter 980 is unconstitutional because it lacks a temporal context, and because the evidence is insufficient as a matter of due process. The evidence is insufficient because it fails to establish any time frame, even loosely defined, during which Mr. Purifoy is said to pose a significant risk.

(Appellant's Brief (Exhibit B) at 11-12.)

Indeed, the argument headings for sections II, III, and IV of his brief further confirm the nature and extent of the arguments that he presented to the court of appeals:

> II. THE EVIDENCE WAS INSUFFICIENT, AS A MATTER OF DUE PROCESS BECAUSE THE STATE DID NOT PROVE THAT MR. PURIFOY'S MENTAL DISORDERS MOTIVATE HIM IN A MANNER THAT DISTINGUISHES HIM FROM ANY OTHER PERSON WHO CAN BE SAID TO POSE A RISK BASED ON

>    PAST CONVICTIONS.
>
>    . . . .
>
>    III. THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF DUE PROCESS BECAUSE THE STATE DID NOT PROVE THAT MR. PURIFOY, IF DANGEROUS IN THE 1970's, 1980's, OR AS RECENTLY AS 1990, WAS DANGEROUS AT THE TIME THE COURT ENTERED ITS VERDICT.
>
>    . . . .
>
>    IV. DUE PROCESS WAS ALSO VIOLATED WHEN THE STATE WAS ALLOWED TO DEPRIVE MR. PURIFOY OF LIBERTY WITHOUT PROVING HE WAS LIKELY TO COMMIT ACTS OF SEXUAL VIOLENCE WITHIN ANY PARTICULAR PERIOD, EVEN A GENERALLY DEFINED ONE. BECAUSE IT LACKS A TEMPORAL CONTEXT FOR PREDICTING FUTURE DANGEROUSNESS, CHAPTER 980 IS UNCONSTITUTIONAL.

(Appellant's Br. (Exhibit B) at 23, 30, and 31.)

As is clear from the above, with the exception of the issue relating to the untimeliness of the § 980 petition, the entirety of Purifoy's state appeal dealt in one fashion or another with the insufficiency of the evidence presented against him. It did not deal with constitutional questions involving double jeopardy or *ex post facto* punishment.

As previously stated, before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first, or risk procedural default. "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir.1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). This means that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S.

11

838, 845 (1999). "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004.)

Under the doctrine of procedural default, a federal habeas court will not review defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50. The petitioner bears the burden of establishing that his procedural default is excused by one of these two exceptions. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).

To satisfy the cause and prejudice standard, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner must also show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). To demonstrate that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims, the petitioner is required to show that he is "actually innocent." *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

Purifoy has not demonstrated that some objective factor external to the defense impeded counsel's efforts to present the above-identified issues to the court of appeals. Instead, he seems to argue that the Wisconsin appellate courts had previously, in cases other than his, ruled contrary to his position on such issues. Thus, he should not be required to present them again to the state courts before presenting them to this court in the context of a federal habeas petition. Purifoy is wrong.

In *Smith v. Murray,* 477 U.S. 527 (1986), the Supreme Court made clear that the perceived futility of an argument does not constitute "cause" for a procedural default. In *Smith* the court stated:

> Here the record unambiguously reveals that petitioner's counsel objected to the admission of Dr. Pile's testimony at trial and then consciously elected not to pursue that claim before the Supreme Court of Virginia. The basis for that decision was counsel's perception that the claim had little chance of success in the Virginia courts. With the benefit of hindsight, petitioner's counsel in this Court now contends that this perception proved to be incorrect. Even assuming that to be the case, however, a State's subsequent acceptance of an argument deliberately abandoned on direct appeal is irrelevant to the question whether the default should be excused on federal habeas corpus. Indeed, it is the very prospect that a state court "may decide, upon reflection, that the contention is valid" that undergirds the established rule that "perceived futility alone cannot constitute cause[.]" "[A]llowing criminal defendants to deprive the state courts of [the] opportunity" to reconsider previously rejected constitutional claims is fundamentally at odds with the principles of comity that animate *[Wainwright v.] Sykes* [, 433 U.S. 72 (1977)] and its progeny.

477 U.S. at 534-35.

Because Purifoy has failed to show "cause" for his procedural default, the only way he can circumvent his procedural default is by demonstrating that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims. And in order to demonstrate a fundamental miscarriage of justice, he must show that he is "actually innocent." *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

Purifoy has not demonstrated that he is "actually innocent." To the contrary, it is undisputed that he committed both the rape and murder of which he was convicted. His only dispute is with the legality of the "penalties" that have been imposed on him arising out of the convictions. Such being the case, Purifoy's procedural default of his double jeopardy and *ex post facto* constitutional claims prevent their being considered by this federal habeas court.

Purifoy's final claim is that "[t]he evidence was insufficient as a matter of Due Process because

13

the State did not prove that [he] was dangerous at the time the Court entered its verdict." (Habeas Pet. at 9.) It would appear that Purifoy is here challenging the constitutionality of Wis. Stat. § 980 to the extent that such statute "lacks a temporal context for predicting future dangerousness." I say that because it was this claim (challenging the constitutionality of § 980 on such grounds) that Purifoy presented to, and was rejected by, the Wisconsin Court of Appeals. In addressing this claim, the court of appeals stated as follows:

> Lastly, Purifoy argues that WIS. STAT. ch. 980 is unconstitutional because it "lacks a temporal context for predicting future dangerousness." Purfoy contends that the statute "has no requirement that the dangerousness be imminent" and "[t]his lack of temporal context violates due process." We rejected this argument in *State v. Olson*, 2006 WI App 32, ¶ 1, 290 Wis.2d 202, 204-205, 712 N.W.2d 61,63.

(Ct. App. Dec.¶ 15.) Because the Wisconsin Court of Appeals relied on its previous decision in *Olson* in rejecting Purifoy's claim, it seems appropriate for this federal habeas court to examine the *Olson* decision to see whether that decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

First of all, nowhere in his briefs filed with this court does Purifoy cite to any United States Supreme Court precedent that is contrary to the Wisconsin Court of Appeals' decision in *Olson*. Nor does he cite any Supreme Court precedent that he claims the Wisconsin Court of Appeals unreasonably applied in *Olson*.

In *Olson*, the respondent, Olson, challenged his § 980 civil commitment on the grounds that "ch. 980 is unconstitutional because its definition of 'dangerousness' lacks 'a temporal context' limited to 'imminent danger.'" *Olson* 290 Wis. 2d at 205, 712 N.W.2d at 63. In rejecting that argument the court of appeals stated:

Our courts have recognized that ch. 980 serves two important compelling purposes:

14

protecting the public from violent sex offenders and providing care and treatment to individuals whose mental disorders predispose them to sexual violence. As a class, these individuals present a graver danger to the public than others with mental disorders. Whereas the state generally confines ch. 51 [non-sexual disorder commitment] patients for reasons other than danger to others, such danger supplies the *only* basis for a ch. 980 commitment. Individuals committed pursuant to ch. 980 pose a danger because their mental disorders affect their ability to control their antisocial behavior. Overcoming these impulses may require a great deal of treatment aimed at developing adequate coping skills and sometimes entail the use of nontraditional therapies where other methods fail. Such therapy takes time, the length of which may differ from one offender to the next. Moreover, in *every* ch. 980 case, the individual's propensity for violence has already manifested itself in concrete behavior: the statute only allows commitment where the person has already committed a violent offense. The underlying propensity for uncontrollable violence is not confined to the immediate future but rather presents an ongoing threat to the public. Thus, the fact that the legislature did not myopically limit its view of dangerousness to the immediate future does not render the statute unconstitutionally infirm.

. . . .

Our supreme court has had many opportunities to invalidate WIS. STAT. ch. 980. We assume it has not done so because it does not find the statutory definition of "dangerousness" objectionable. Moreover, in the context of WIS. STAT. ch. 51 commitments, it has rejected precisely the "imminence" requirement that Olson advocates. Because mentally disordered sex offenders present a much greater threat to the public than those committed under ch. 51, the State has an even greater interest in rejecting an "imminence" requirement in the ch. 980 context. We further hold that the statute is not vague just because the legislature did not limit the "foreseeable future" to an arbitrary period of time.

*Olson*, 290 Wis.2d at 208-09; 212 (internal citations omitted; emphasis in original)

Although the court in *Olson* did not cite to it, the Wisconsin Supreme Court in a prior case specifically held that, when there had been a break in the offender's incarceration and the offender was re-incarcerated for *nonsexual behavior*, due process did not require a showing of a recent overt act to prove current dangerousness. *See Wisconsin v. Bush*, 283 Wis.2d 90, 699 N.W.2d 80 (2005). To be sure, in the instant case (unlike in *Bush* where the defendant was on parole when he re-offended) Purifoy has not had a break in his incarceration. That is to say, unlike Bush, Purifoy has not been

15

released to live in the community on parole or otherwise. Nevertheless, *Bush* is somewhat helpful in reaching a decision in the instant case. This is because in reaching its decision the *Bush* court was mindful of relevant Supreme Court precedent, to wit, *Kansas v. Crane*, 534 U.S. 407 (2002) and *Kansas v. Hendricks*, 521 U.S. 346 (1997).

In *Laxton v. Bartow*, 421 F.3d 565 (7th Cir. 2005), the Court of Appeals for the Seventh Circuit discussed the essential holdings of those two Supreme Court cases.

> The Supreme Court has held that although freedom from physical restraint is "at the core of the liberty protected by the Due Process Clause," this interest may be overridden, even in the civil context, in certain limited circumstances. More specifically, the Court has upheld involuntary commitment statutes which "couple [ ] proof of dangerousness with the proof of some additional factor, such as 'mental illness' or 'mental abnormality.'" As the Court explained, these statutory requirements "serve to limit involuntary civil commitments to those who suffer from a volitional impairment rendering them dangerous beyond their control."
>
> In *Hendricks*, the Court upheld the Kansas Sexually Violent Predator Act (SVPA), noting that it "requires a finding of future dangerousness, and then links that finding to the existence of a 'mental abnormality' or 'personality disorder' that makes it difficult, if not impossible, for the person to control his dangerous behavior." The Court explained that the precommitment requirement of a mental disorder or personality disorder outlined in the SVPA is "consistent with the requirements of these other statutes that we have upheld in that it narrows the class of persons eligible for confinement to those who are unable to control their dangerousness."
>
> Several years later [in *Crane*] the Court again addressed "the constitutional requirements substantively limiting the civil commitment of a dangerous sexual offender" in the context of the Kansas SVPA. The Court concluded that the Kansas Supreme Court had interpreted *Hendricks* "in an overly restrictive manner" when it understood *Hendricks* to "insist [ ] upon 'a finding that the defendant cannot control his dangerous behavior' – even if (as provided by Kansas law) problems of 'emotional capacity' and not 'volitional capacity' prove the 'source of bad behavior' warranting commitment." The Court clarified that *Hendricks* did not set forth a "requirement of a *total* or *complete* lack of control," and concluded:
>
>> It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of

16

> the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

*Laxton*, 421 F.3d at 569-70.

Nowhere in either *Hendricks* or *Crane* did the Supreme Court rule that there must be an *imminent* danger presented by an offender in order for him to be civilly committed as a sexually violent person within the meaning of a state statute such as Wis. Stat. ch. 980. Indeed, Purifoy does not argue otherwise. Moreover, Purifoy has not presented (and this court's independent research has not uncovered) any Supreme Court precedent that could be read to hold that Due Process requires that imminent danger must be shown in order for an individual to be civilly committed as a sexually violent offender. Such being the case, it follows that Purifoy is not entitled to habeas corpus relief on his last claim. This is because a federal habeas court can only grant relief if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). That did not occur in Purifoy's case.

In conclusion, and for all the foregoing reasons, Purifoy's petition for a writ of habeas corpus will be denied and this action will be dismissed.

There is one final matter to address. The recently amended provisions of Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part, as follows:

> a) Certificate of Appealability. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or

17

issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Under 28 U.S.C. § 2253(c), a district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court of appeals has held that this standard differs only in scope from the certificate of probable cause standard that was previously developed and applied by the courts. *See Herrera v. United States*, 96 F.3d 1010, 1012 (7th Cir. 1996). The *Herrera* court said that "a certificate of probable cause places the *case* before the court of appeals, but a certificate of appealability must identify each *issue* meeting the 'substantial showing' standard." *Id*. (emphasis added). Thus, for the court to issue a certificate of appealability to Purifoy, it must identify for the court of appeals the issues that are "debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (emphasis added) (quoting *Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980)). This test was reiterated in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), *rev'd on other grounds, Miller-El v. Dretke*, 545 U.S. 231 (2005).

> Consistent with our prior precedent and the text of the habeas corpus statute, we reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.

*Id.* at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In my opinion, and for the reasons set forth in this decision denying Purifoy's habeas corpus petition, none of Purifoy's claims warrants a certificate of appealability. Put simply, the petitioner has

18

not demonstrated "a substantial showing of the denial of a constitutional right" by demonstrating either that jurists of reason could disagree with this court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Consequently, the court will deny Purifoy a certificate of appealability. Of course, Purifoy retains the right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

**NOW THEREFORE IT IS ORDERED** that Purifoy's claims for federal habeas corpus relief be and hereby are **DENIED**;

**IT IS FURTHER ORDERED** that Purifoy's petition for a writ of habeas corpus and this action be and hereby are **DISMISSED**;

**IT IS FURTHER ORDERED** that Purifoy's "Motion to Continue" be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 18th day of October 2010 at Milwaukee, Wisconsin.

                                              **BY THE COURT:**

                                              s/ William E. Callahan, Jr.
                                              WILLIAM E. CALLAHAN, JR.
                                              United States Magistrate Judge